**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HISPANIC FEDERATION, ALIANZA NACIONAL DE CAMPESINAS, GREENLATINOS, LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL HISPANIC MEDICAL ASSOCIATION, and SOUTHWEST ENVIRONMENTAL CENTER, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE AIR FORCE, <br><br> Defendant. | Case No. 18-12077 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Plaintiffs Hispanic Federation, Alianza Nacional de Campesinas, GreenLatinos, Labor Council for Latin American Advancement, National Hispanic Medical Association, and Southwest Environmental Center (collectively, "Plaintiffs") assert violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by Defendant United States Department of the Air Force ("Air Force") for improperly withholding requested agency records concerning toxic waste sites at Goodfellow Air Force Base ("Goodfellow"), as well as plans to construct semi-permanent immigration detention camps at Goodfellow that may be in proximity to toxic waste sites. The Trump Administration has proposed to house as many as 7,500 immigrant children at Goodfellow as part of its "zero-tolerance" immigration policy.

1

2.      Like many military bases, Goodfellow is known to have areas where toxic substances have been stored and/or disposed of over many years.  However, neither the Air Force nor the U.S. Department of Health and Human Services ("HHS") have released detailed information about the locations of these proposed camps, their proximity to the potential environmental hazards on the base, nor the potential harm to children detained there.

3.      On August 8, 2018, Plaintiffs submitted a FOIA request to the Air Force for records related to environmental hazards and the proposed detention camps at Goodfellow. Additionally, Plaintiffs asked that the FOIA requests be processed on an expedited basis pursuant to 32 C.F.R. § 286.8(e) in light of the imminent threat to lives and physical safety of the children who would be detained in these proposed camps, and the substantial humanitarian interests at stake.

4.      On August 23, 2018, the Air Force granted Plaintiffs' request for expedited processing, agreeing to release the records "as soon as practicable," as required by FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and U.S. Department of Defense ("DOD") regulations, 32 C.F.R. § 268(e)(1).  Specifically, the Air Force acknowledged that releasing the requested records would serve a humanitarian need.

5.      The Air Force referred Plaintiffs' FOIA request to the Goodfellow Air Force Base FOIA Office and other U.S. Department of Defense ("DOD") components for processing, and directed plaintiffs to certain publicly available documents.  The Air Force indicated that Goodfellow would process and produce the bulk of the requested documents.

6.      Despite having agreed to process Plaintiffs' FOIA request on an expedited basis, the Air Force has not provided any records that were not already publicly available to Plaintiffs in response to the request.

7. The Air Force has failed to provide Plaintiffs with a complete and lawful response to their FOIA request within the timeframe required by FOIA.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

9. Venue is proper in this district because plaintiff Hispanic Federation resides and has its principal place of business in this judicial district.  5 U.S.C. § 552(a)(4)(B).

## PARTIES

10. Plaintiff Hispanic Federation ("HF"), founded in 1990, is one of the nation's leading Latino nonprofit membership organizations with 100-plus member organizations.  With headquarters in New York, offices in Washington, D.C., Connecticut, Florida, and Puerto Rico, and a program footprint in 20 states with significant Latino and immigrant populations, HF works to support Hispanic and immigrant families and strengthen Latino institutions in the areas of education, health, immigration, civic engagement, economic empowerment, and the environment.

11. HF has worked for years using both legislative and grassroots advocacy to support passage of immigration policies that are humane and that provide solutions to fix our broken immigration system.  As co-chair of both the Energy and Environment and Immigration Committees of the National Hispanic Leadership Agenda, a broad coalition of 46 national Latino organizations, HF has been a leading Latino voice in rapid response efforts regarding anti-immigrant legislation as well as legislation that causes environmental harm.  HF has been present at every major mobilization in support of Dreamers in Washington, D.C., and, most recently, participated in protests at the El Tornillo Detention Center in El Paso, Texas.

12. HF is a nonprofit organization with a mission to protect and promote the public interest especially as it relates to immigrant and Latino communities. HF has extensive outlets for public education and information dissemination and intends to make any information received available to its constituents, and to the broader public, as widely as possible, and at no charge. HF intends to use its mailing lists, social media platforms, website, and broad network of member organizations, political colleagues and press to disseminate information it receives.

13. Alianza Nacional de Campesinas ("Alianza") is a national farmworker women's organization that was founded in 2011 to address and advance the rights of more than 700,000 farmworker women in the United States through its national coalition. Since it was founded in 2011, Alianza has called for the fair treatment of immigrant women and children, including refugees and asylees, improved immigration protections and more expedient processing of immigration petitions for those seeking relief.

14. As a part of its immigration advocacy efforts, Alianza has been a part of a broad coalition that has advocated closing family detention centers, and it has raised concerns about violence against immigrant women and children in immigration detention. Most recently, it has called on the U.S. Government to respect the rights afforded to refugee and asylum seekers as provided under U.S. immigration law, and it has repeatedly raised its concerns about the safety of the immigrant children who have been separated from their parents under the Trump Administration's "zero tolerance" policy.

15. Alianza is a non-profit, social good organization. Alianza intends to share the information that it obtains through this request to educate farmworker women and other community members. Alianza will disseminate this information through its social media platforms and through direct educational efforts with its members across the country, including

4

members living in and around Goodfellow who may be directly impacted by the construction of these camps.  Alianza will also disseminate this information to its media contacts and through mass distribution using its mailing list, among other efforts.

16.     GreenLatinos is a national nonprofit organization that convenes a broad coalition of Latino leaders committed to addressing national, regional and local environmental, natural resources and conservation issues that significantly affect the health and welfare of the Latino community in the United States.  GreenLatinos seeks to provide an inclusive table at which its members establish collaborative partnerships and networks to improve the environment; protect and promote conservation of land and other natural resources; amplify the voices of minority, low-income and tribal communities; and train, mentor, and promote the current and future generations of Latino environmental leaders for the benefit of the Latino community and beyond.

17.     GreenLatinos has demonstrated the ability and clear intent to timely disseminate information received from this FOIA request to a broad audience of persons interested in the subject – including its members, national and local ally organizations who have significant memberships and constituencies interested in this issue, and members of the media who regularly cover immigrant detention.  In addition, GreenLatinos has the ability and intent to share the information it obtains to the public by means of email, website posts, social media posts, and in-person communication including at the organization's National Summit.

18.     Labor Council for Latin American Advancement ("LCLAA") is the leading national organization for Latino(a) workers and their families.  LCLAA was born in 1972 out of the need to educate, organize and mobilize Latinos in the labor movement and has expanded its influence to organize Latinos in an effort to impact workers' rights and their influence in the political process.  LCLAA represents the interest of more than 2 million Latino workers in the

American Federation of Labor-Congress of Industrial Organizations (AFL-CIO), the Change to Win Federation, Independent Unions and all its membership.

19.     LCLAA is a non-profit organization with a mission to defend and work for immigrant and working family rights.  LCLAA plans to disseminate this information for free through its 52 chapters in 23 states, thus further helping to inform the public across the country about this crucial issue.  LCLAA will also circulate this information through its social media platforms, and will reach out to national and international media outlets.

20.     National Hispanic Medical Association ("NHMA") works to improve the health of Hispanics through advocacy, leadership development and educational activities.  The mission of NHMA is to empower Hispanic physicians to lead efforts to improve the health of Hispanic and other underserved populations.  NHMA has been involved in advocacy concerning immigration policy and the direct health implications of these policies for families that are detained in government-funded detention centers.  NHMA has called on Congress to fix these issues and treat families that are currently detained with the dignity they deserve.

21.     NHMA has the ability and intends to share information obtained from this FOIA request through its social media networks and its networks via email and its monthly newsletter.

22.     Southwest Environmental Center ("SWEC") is a non-profit conservation organization dedicated to the protection and restoration of native wildlife and their habitats in the Southwest.  Headquartered in Las Cruces, New Mexico, SWEC has more than 10,000 members and online activists.  SWEC's members and staff live in or regularly visit the U.S.-Mexico borderlands region in New Mexico and Texas and regularly use the myriad federal, state, and local protected lands along the U.S.-Mexico border in New Mexico and Texas for hiking,

camping, viewing and studying wildlife, photography, hunting, horseback riding, and other scientific, vocational, and recreational activities.

23. SWEC has a long history of advocacy within the borderlands region, including advocacy against border militarization and for the protection of human rights and the environment of the Southwest. SWEC has taken a leading role in organizing protests against the construction of a border wall along the U.S.-Mexico border, and has partnered closely with human rights and immigration groups in this fight.

24. SWEC intends to disseminate any information it receives from this request promptly to the public at large via social media. In addition, SWEC intends to draw attention to this information at public events, in letters to editors, and through other means during the course of its advocacy. SWEC will also share any information it receives with local government officials in Las Cruces and Doña Ana County.

25. Plaintiffs use FOIA to obtain information from federal agencies in order to inform their members and the public about immigration, public health, and environmental issues. Plaintiffs regularly convey important information to their members and the public through publications and press releases, as well as by publicly releasing information and documents obtained through FOIA requests.

26. Plaintiffs bring this action on their own behalf and on behalf of their members. Plaintiffs and their members have been and continue to be injured by Defendant's failure to timely respond to Plaintiffs' request for documents within the timeframe mandated by FOIA. The requested relief will redress these injuries.

27. The Air Force is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and has possession or control of the records Plaintiffs seek in this action.

## LEGAL BACKGROUND

28. Enacted in 1966, the Freedom of Information Act was designed to "encourage public disclosure of information" in order to "'ensure an informed citizenry.'" *Am. Civil Liberties Union v. Dep't of Def.*, 543 F.3d 59, 66 (2d Cir. 2008) (citations omitted). To this end, FOIA requires agencies of the federal government to release, upon request, information to the public, unless one of nine specific statutory exemptions applies. 5 U.S.C. § 552(a)(3)(A). These exemptions are narrowly construed, and the agency bears the burden of establishing the applicability of each exemption as to each record for which it is claimed. *See Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011).

29. Upon receiving a FOIA request, an agency has twenty working days to respond by determining whether responsive documents exist and whether the agency will release them. 5 U.S.C. § 552(a)(6)(A). Once a determination is made, FOIA further requires agencies to make the requested records themselves "promptly available" to requesting parties. *Id.* § 552(a)(3)(A). An agency may delay an initial determination by ten working days only if the agency can demonstrate that it faces "unusual circumstances." *Id.* § 552(a)(6)(B); 32 C.F.R. § 286.8(c).

30. Over and above these statutory mandates for all FOIA requests, FOIA requires agencies to provide for expedited processing of requests for records in cases in which the requestor demonstrates a compelling need. 5 U.S.C. § 552(a)(6)(E)(i); 32 C.F.R. § 286.8(e)(1). A compelling need exists when the failure to obtain expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual, or when there is an urgency to inform the public concerning an actual or alleged Government activity on a request that is made by an individual primarily engaged in disseminating information. 5 U.S.C. § 552(a)(6)(E)(v); 32 C.F.R. § 286.8(e)(1)(i). In addition, DOD regulations require agency

components to provide for expedited processing of requests for records if loss of substantial due process rights is imminent, or if the failure to obtain expedited processing could reasonably be expected to harm substantial humanitarian interests. 32 C.F.R. § 286.8(e)(1)(ii).

31. Upon receiving a request for expedited processing, an agency must provide a determination of whether the request for expedited processing will be granted within 10 calendar days after the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(I); 32 C.F.R. § 286.8(e)(4). An agency shall process as soon as practicable any request for records to which the agency has granted expedited processing. 5 U.S.C. § 552(a)(6)(E)(iii); 32 C.F.R. § 286.8(e)(4).

32. If an agency withholds responsive records, in whole or in part, the burden is on the agency to prove that an exemption applies and that it outweighs FOIA's policy of disclosure. *See, e.g.*, 5 U.S.C. § 552(a)(4)(B); *Halpern v. F.B.I.*, 181 F.3d 279, 287 (2d Cir. 1999).

33. Whenever an agency determines that a portion of a record should be withheld under one of FOIA's exemptions, the agency must still release to the public any portions of that record that contain "reasonably segregable" non-exempt information. 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

34. FOIA provides that the district court shall have jurisdiction "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

## FACTUAL BACKGROUND

35. In May 2018, the Trump Administration announced its "zero-tolerance" immigration policy, under which the U.S. Government would take a stricter stance on illegal crossings at the Mexico border, including increased detention of immigrants and separation of

children from their parents or guardians.  In June 2018, the Trump Administration announced that it would pursue plans to construct semi-permanent immigration detention camps at Goodfellow to detain unaccompanied immigrant children who had crossed the southern border of the United States.

36. In July 2018, the Air Force shared a draft Environmental Assessment for HHS's planned temporary detention camps at Goodfellow.  These documents, drafted as part of the environmental review procedures required by the National Environmental Policy Act ("NEPA"), described HHS's proposal to construct the temporary camps, for which the Air Force would "provide approximately 70 contiguous acres of level and cleared land, erect temporary structures to provide living and sleeping quarters for up to 7,500 unaccompanied children and work facilities for approximately 7,500 HHS support staff for up to 180 days."  U.S. Dep't of Air Force, Draft Environmental Assessment for the U.S. Department of Health and Human Services. Temporary Facilities for Sheltering Unaccompanied Children at Goodfellow Air Force Base, Texas 2 (July 2018), https://www.goodfellow.af.mil/Portals/5/documents/DEA-HHS%20Temporary%20Facilities%20at%20Goodfellow.pdf?ver=2018-07-06-171402-213, attached as Exhibit A.  The Environmental Assessment noted that the proposed camps were near at least two sites that are known to be polluted with hazardous substances and are not yet remediated. *Id.* at 3-14 to -15.

37. On August 8, 2018, Plaintiffs submitted a FOIA request to the Air Force seeking several categories of records including, but not limited to, records concerning known or suspected toxic sites at Goodfellow that have the potential to cause dangerous human exposure to toxic chemicals via air, water, and soil to immigrants detained at and to workers constructing proposed detention camps at the military base.  Plaintiffs requested records and studies related to

specific contaminated sites and their cleanup, as well as records that relate more directly to the proposed detention camps, such as plans for the proposed camps, testing of environmental media near the proposed camps, and communications between agencies concerning the camps. A copy of the request is attached to this complaint as Exhibit B.

38. Plaintiffs also asked the Air Force to process their FOIA request on an expedited basis pursuant to 32 C.F.R. § 286.8(e) in light of the urgent need to inform the public, the imminent threat to the lives and physical safety of the families and children who would be detained in these proposed camps, and the substantial humanitarian interests at stake.

39. Plaintiffs' request for expedited processing was in conformance with the requirements for such requests set forth in FOIA and DOD's regulations, 32 C.F.R. § 286.8(e). Plaintiffs urgently need the information to inform their members and the public about imminent government plans to house thousands of immigrant families and unaccompanied minors at Goodfellow. The failure to obtain the requested records on an expedited basis could reasonably be expected to pose an imminent threat to the lives or physical safety of adults and children housed in the temporary shelters at Goodfellow, and it could reasonably be expected to harm substantial humanitarian interests. As Plaintiffs stated in their request, Goodfellow has numerous areas under investigation where past military operations have contaminated soil, and potentially water and air, with hazardous chemicals that can cause cancer, neurological damage, and injury to major human organs. Furthermore, DOD is currently investigating these areas pursuant to federal environmental requirements such as the provisions of the Superfund program, but the contaminated and unsafe areas have not yet been remediated and the threat has not yet been clearly delineated.

11

40. On August 23, 2018, Plaintiffs received an acknowledgment letter from the Air Force confirming receipt of their August 8, 2018 FOIA request. The letter granted Plaintiffs' request for expedited processing, acknowledging that Plaintiffs "demonstrated that release will serve a humanitarian need," and stated that the Air Force would move Plaintiffs' request "to the top of the queue and will process it as expeditiously as practicable." In the letter, attached as Exhibit C, defendant also notified Plaintiffs that their FOIA request had been transferred to the Air Force's Goodfellow FOIA office for processing and direct response to Plaintiffs. In addition, the Air Force referred the request to other DOD components for processing some categories of requested documents and directed Plaintiffs to certain responsive documents that were already publicly available on the Air Force Civil Engineer Center's website.

41. On August 28, 2018, Plaintiffs received a letter from the Air Force's Goodfellow FOIA office acknowledging receipt of the transferred FOIA request. In the letter, attached as Exhibit D, the Air Force stated that Plaintiffs' request was being processed as a "complex request" and therefore the agency estimated that the request would take 30 working days to complete.

42. On October 9, 2018, Plaintiffs received a letter from the Air Force's Goodfellow FOIA office, stating that the Air Force needed more time to process the request, but anticipating that the agency would produce the requested records within 14 days. A copy of the letter is attached as Exhibit E.

43. On October 17, 2018, Plaintiffs received a letter from the Air Force's Goodfellow FOIA office, in which the Air Force purported to grant itself another extension, stating that the agency needed more time and anticipating a response by October 24, 2018. A copy of the letter is attached as Exhibit F.

44. On November 6 and 8, 2018, Plaintiffs' counsel made multiple attempts to contact the Goodfellow FOIA office by phone to obtain an update on the status of Plaintiffs' FOIA request, but counsel's phone calls and voicemails were never returned.

45. On November 9, 2018, more than two weeks after the Air Force's self-extended October 24 deadline, Plaintiffs' counsel emailed the Goodfellow FOIA Office to seek an update on the status of the FOIA request.

46. On November 13, 2018, a Goodfellow FOIA officer responded by email:

> I expect to have your FOIA request 2018-03833-F completed and any applicable information to you shortly. We had a lot of personnel shift around to other assignments and I only recently took over the GAFB FOIA program. Let me get the paperwork put together and I expect to have it to you within a week.

A copy of the email is attached as Exhibit G.

47. On November 28, 2018, more than two weeks after the Goodfellow FOIA officer's email, Plaintiffs' counsel contacted the Goodfellow FOIA officer via phone to inquire about the status of the FOIA request. The Goodfellow FOIA officer stated that the responsive records still had to go through a "legal review" and then a final review by the "IDA" before the records could be released. As a result, the Goodfellow FOIA officer estimated that the production of responsive records would not be completed for another "1-2 weeks."

48. As of the date of this filing, more than four months after submitting their FOIA request, and more than three months since the Air Force granted Plaintiffs' expedited processing request, Plaintiffs have yet to receive any records from the Air Force that were not already publicly available.

**CLAIM FOR RELIEF**

49. Plaintiffs re-allege and incorporate the allegations of all preceding paragraphs of this Complaint as if fully set forth herein.

50. Despite granting Plaintiffs' request for expedited processing, the Air Force has failed to respond to Plaintiffs' FOIA request "as soon as practicable," as required by FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and DOD regulations, 32 C.F.R. § 286.8(e)(1).

51. By failing to release records responsive to Plaintiffs' August 8, 2018 FOIA request within the timeframe required by the statute even for non-expedited requests, *see* 5 U.S.C. § 552(a)(3)(A) & (a)(6), and DOD regulations, 32 C.F.R. § 286.8(c), the Air Force has violated FOIA's mandate to "promptly" release agency records to the public.

52. The Air Force has wrongfully withheld the requested records from Plaintiffs.

53. FOIA authorizes Plaintiffs to seek judicial review of the Air Force's failure to timely respond to Plaintiffs' request without further exhausting any administrative remedies.

**REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiffs request that this Court enter a judgment:

(1) declaring that the Air Force has violated FOIA by failing to provide the requested records as soon as practicable;

(2) declaring that the Air Force has violated FOIA by failing to timely respond to Plaintiffs' FOIA requests;

(3) ordering that the Air Force make all requested records available to Plaintiffs promptly;

(4) retaining jurisdiction over this case to rule on any assertions by the Air Force that any responsive records, in whole or in part, are exempt from disclosure;

   (5) awarding Plaintiffs' litigation costs and reasonable attorneys' fees in this action;

and

   (6) ordering such other relief as the Court may deem just and proper.

DATED: December 20, 2018    Respectfully Submitted,

                */s/* Thomas J. Cmar
                Thomas J. Cmar (TC 8791)
                Earthjustice
                1101 Lake Street, Suite 405B
                Oak Park, IL 60301
                T: (312) 257-9338
                E: tcmar@earthjustice.org

                Mychal R. Ozaeta (to be admitted *pro hac vice*)
                Earthjustice
                1617 John F. Kennedy Blvd., Suite 1130
                Philadelphia, PA 19103
                T: (215) 717-4529
                E: mozaeta@earthjustice.org

                Melissa Legge (admission pending)
                Earthjustice
                48 Wall Street, 15th Fl.
                New York, NY 10005
                T: (212) 823-4978
                E: mlegge@earthjustice.org

                *Counsel for Plaintiffs Hispanic Federation,*
                *Alianza Nacional de Campesinas, GreenLatinos,*
                *Labor Council for Latin American Advancement,*
                *National Hispanic Medical Association, and*
                *Southwest Environmental Center*